Hand, J.
The jury have found the contract of bailment in this case, and assessed the damages for its violation by the defendant. As to the time in which his contract is to be performed, a common carrier is bound to use all reasonable diligence. That was not done in this case; and on the question of damages, the jury probably took a view of the circumstances very favorable to the defendant. But their verdict cannot be disturbed solely upon that ground. Nor did the judge err in the admission of evidence as to the circumstances under which the receipt was given. The proposition was not to vary or explain the terms of the receipt; and the defendant had a right to show, if such was the fact, that it was obtained from his agent or servant under such circumstances as did not bind him.
There was no exception to the charge as given; and the only question really arising on this bill of exceptions is, whether the judge should have told the jury that, if there was a contract to carry the goods to Albany, .the plaintiffs yvere entitled, as a matter of law, to recover the full value of the goods on account of the delay. The plaintiffs asked for an unqualified charge on this point, without reference to the motives of the defendant, or any circumstances that might .be supposed to explain the transaction. I think the judge could not have charged as requested. The plaintiffs state in their complaint that the property was wholly lost to them, and that they-Iost the sale to Greenman. But the testimony does not sustain that allegation; not in a legal sense.
*515 Before the Code, a good way of ascertaining legal obligations was by considering the remedies by which they were enforced. A supposed uniform and universal remedy in all cases has, in a measure, deprived us of these aids; but still some light may be obtained from analogy. This property was, from some cause, detained in Troy, some half dozen miles from Albany, about six weeks; and the defendant, during that time, made no effort to send it to its destination. This was inexcusable delay, and undoubtedly entitled the plaintiffs to all real damages sustained by them which were the natural consequence of the neglect. But it does not follow that the plaintiffs had a right to refuse and abandon the property and recover its full value. There is no evidence of a refusal to deliver, nor indeed that the plaintiffs ever demanded the property or gave the defendant notice that it had not been received. They were not bound to do either to give them a right of action. But the judge could not say to the jury, as matter of law, that there had been a conversion; nor does it appear that the property had deteriorated in condition or had seriously depreciated in value, nor was it lost. Where there has been a deterioration and loss, the carrier is liable. (Davis v. Garrett, 6 Bing., 716; Ellis v. Turner, 8 T. R., 531; Story on. Bail., § 508.) In Ellis v. Turner, which was an action on the case, the carrier conveyed the goods beyond the place of destination, intending to deliver them on his return, but they were greatly damaged by the sinking of the vessel without any want of ordinary care or attention of the master or crew, and the carrier was held liable to make good the loss. Under the former system, to maintain trover against a carrier, there must have been an unjustifiable refusal to deliver or delivery to a wrong person, .or sale or destruction, oi some actual wrong or injurious conversion; something more than mere omission. (Packard v. Getman, 4 Wend., 613; Hawkins v. Hoffman, 6 Hill, 586; 2 Saund. R., 49, i. k. m.) It was not necessary that the wrong should be intentional; *516 but, as a general rule, a mere non-feasance did not and does not work a conversion. And indeed every unauthorized intermeddling with the property of another is not a conversion. It was held by the court of exchequer in England that the act of the ferry-man in putting the horses of the plaintiff on shore out of his ferry-boat, though the jury should find it was done wrongfully, was not a conversion of the property, unless done with the intent to convert it to his own use or that of some third person, or unless the act had the effect to destroy it or change its quality. (Fouldes v. Willoughby, 8 M. & W., 540.) If it had appeared in this case that the defendant, from gross negligence, evincing a disregard of his contract and the rights of the plaintiffs, had carried the property by and on to another port, and had, with actual knowledge of all the facts, kept it several weeks, I am not prepared to say the jury might not have found that there was something more than omission, or that the evidence would not have sustained a verdict that the defendant was guilty of conversion, if rendered under a proper charge from the court. However, that point need not be decided here, for it was not raised upon the! trial; the plaintiffs putting this part of their case upon the ground of mere delay, insisting that the.defendant should pay for the property as a penalty for that delay, and thus, as it were, impliedly treating the case as a continuing bailment, rather than one of loss or actual conversion to the use of the defendant. If the facts of the case would not have sus tained trover, the remedy would naturally have been an action of assumpsit or case; and the plaintiffs have not shown that they would have been entitled to recover for the full value of the property in either of those actions.
There were extra charges for taking the goods from Troy to Albany, but no demand therefor appears to have been made upon the consignee; and, besides, the refusal to receive them was not put upon that ground.
I think the judgment should be affirmed.
*517 Gardiner, Ch. J.
The action was against the defendant as a common carrier, for the non-delivery of a quantity of medicine shipped at New-York and consigned to certain persons in Albany.
For the defendant, one Wilson was called as a witness, and was asked by the counsel for the defendant “to state the circumstances under which the receipt for the property was signed.” This was allowed and the plaintiffs excepted. I can perceive no objection to this ruling of the learned judge. The plaintiffs had previously proved by the carman employed to deliver the goods, that the captain of the boat refused to receive the property on seeing that it was directed to Albany, saying that his boat did not go there; and was induced to take the medicine and sign the receipt, on his informing him that there had been an understanding to that effect with Mr. Griffith, the defendant. The defendant had a right to explain these circumstances, which formed a part of the plaintiffs’ evidence by his own witness; and the question to which the objection applied went no further. The evidence was also admissible to repel the inference of a conversion, upon which the plaintiffs now insist, by showing that the carriage of the goods to Troy was not an exercise of authority over them, or an user in opposition to the rights of the owners, but in subordination to them. (8 Mees. & Welsby, 547.) If the defendant agreed to transport the goods to Albany, but informed the plaintiffs that his boat, in the usual course of her business, went to Troy in the first instance, this would not change or modify the contract but would be conclusive evidence to show that in taking the goods beyond the port of destination the carrier did not intend to convert them to his own use, or that of any other person.
The second, and most important question arises upon the ' charge as to the measure of damages. The judge instructed the jury, that as the property was not injured or deteriorated, the rate of damages was the difference between the *518 highest market value, when, or after the goods should have been delivered, and when they were actually tendered. In this part of the charge the plaintiffs acquiesced ; they however requested the judge to charge, “ that if there was an agreement to carry the goods to Albany, that unreasonable delay in their delivery made the defendant liable for their full failure.” This was refused, and I think justly. The mere omission of the carrier to deliver property in a reasonable time, is not a conversion or equivalent to a conversion: this has been repeatedly adjudged. (6 Hill, 588 and cases; Angel on Carriers, §§ 431-433.) The owner is entitled to a full indemnity, but not necessarily to- the full value of the goods where, as in this case, they have been offered to him vand refused. If special circumstances exist, such as have been supposed by the counsel for the plaintiffs in his argument, they might be shown and damages given accordingly; but in a case where the market value of the property remains the same between the time of delivery demanded by the contract and the one actually made or tendered, and where the facility for the disposition of the goods, if for sale, is unchanged, it seems to me a most unreasonable rule that a carrier should be compelled to pay the full value of the property without regard to any other circumstance than an omission to perform his contract within a reasonable time.
The whole argument in support of this rule is based upon the hypothesis, that the omission was itself a conversion. This I think is not supported either by principle or authority.
The judgment should be affirmed.
Judgment accordingly.